1
2
3
4
5
6
7
8
9
10
11
12
13
14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Susan Saenz, | ) | No. CV 08-543-TUC-CKJ (JCG) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Michael J. Astrue, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this Court.

Pending before the Court is an opening brief filed by Plaintiff on March 23, 2009 (Doc. No. 12) and a response brief filed by Defendant on April 27, 2009. (Doc. No. 13.) Plaintiff did not file a reply.

The Magistrate Judge recommends that the District Court, after its independent review, grant the relief requested by Plaintiff. The final decision of the Commissioner improperly discounts Plaintiff's own subjective testimony of disability.

<u>PROCEDURAL HISTORY</u>

On July 26, 2005, Plaintiff filed an application for social security disability and supplemental security income (SSI) benefits alleging a disability that began on March 9, 2005. (Tr.127-144.)    A hearing on Plaintiff's application was held before Social Security

1   Administration (SSA) Administrative Law Judge (ALJ) Peter Baum on April 11, 2007. (Tr. 8-

2   16.) On July 9, 2007, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 16.)

3   Plaintiff appealed the ALJ's decision, and the Appeals Council denied the request for review

4   on August 6, 2008. (Tr. 1.)  Plaintiff then filed the instant complaint in U.S. District Court,

5   appealing the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

6                    CLAIMANT'S WORK HISTORY AND MEDICAL HISTORY

7        Plaintiff was born on April 24, 1970; she is currently 39 years old. (Tr. 127.)  She

8   completed the tenth grade in 1986.[1] (Tr. 159.) From 1989 until March, 2005, Plaintiff worked

9   as a waitress and head server. (Tr. 153.)  These were her only jobs as an adult.

10       Plaintiff reported that she began experiencing back pain in July, 2003. (Tr. 349.)  She

11  tried physical therapy and chiropractic care, neither of which was helpful. (*Id*.)

12       In September, 2003, an MRI scan of Plaintiff's spine indicated bulging discs with

13  dessication at T11-T12, L4-L5 and L5-S1. (Tr. 351-52.)

14       In July, 2004, Plaintiff was treated by Dr. Ernest Gradillas for neck and right arm pain.

15  (Tr. 354.) Dr. Gradillas prescribed pain medication. X-rays taken by Dr. Gradillas showed mild

16  decreased disc height at C6-7. (Tr. 352.)

17       On August 4, 2004, she was referred to Dr. Eugene Mar for evaluation of neck pain, back

18  pain and left leg pain. (Tr. 349.) Dr. Mar x-rayed Plaintiff's spine and observed decreased disc

19  height between T11-12, L4-5 and L5-S1.  Dr. Mar also noted anterior osteophytic spurring at

20  L5-S1. Dr. Mar diagnosed Plaintiff with degenerative bulging discs and recommended epidural

21  injections. (Tr. 352.)

22       In October, 2004, Dr. Mar reviewed Plaintiff's earlier x-rays and MRI and concluded that

23  Plaintiff had a degenerative disk at L4-5 and disk protusion at L5-S1. (Tr. 340.)

24       On October 18, 2004, Dr. Brailsford treated Plaintiff for chronic back pain. (Tr. 339.)

25  Dr. Brailsford opined that Plaintiff had degenerative disk disease and recommended that

26

27       [1] At the hearing, Plaintiff testified that she completed school through the ninth grade.
(Tr. 24.)  The Disability Report in the administrative record states that Plaintiff completed 10th

28  grade. (Tr. 159.)

1  Plaintiff try pain medication, epidural injections and, if there is no benefit, surgery. (Tr. 340-
2  41.) After conservative treatment attempts failed, Dr. Brailsford referred Plaintiff to Dr.
3  Lewandrowski for surgical consult. (Tr. 335.)

4      Plaintiff stopped working a few days before Dr. Lewandrowski performed a two-level
5  spinal fusion surgery on Plaintiff's spine on March 15, 2005. (Tr. 245-249, 26.) Although
6  Plaintiff initially left her employment on medical leave, she eventually determined that she
7  could not perform her job following surgery. (Tr. 28.)

8      A few weeks after the surgery, Plaintiff reported to her primary care physician, Dr. Lin,
9  that her pain was worse than it had been before surgery. (Tr. 333.) Dr. Lin prescribed pain
10  medication. (*Id*.)

11      On May 18, 2005, Plaintiff reported to Dr. Lewandrowski that she was still unable to
12  return to work because of her back pain. (Tr. 408.) Dr. Lewandrowski referred Plaintiff to Dr.
13  Goorman for a trigger point injection and to Dr. Brailsford for disability evaluation. (Tr. 408.)

14      In October, 2005, Dr. Lewandrowski noted that Plaintiff continued to suffer back pain;
15  he opined that it might take 6-12 months for Plaintiff's pain to resolve. (Tr. 373.)

16      In December, 2005, an MRI revealed a bulging disc at L5-S1. (Tr. 526.)

17      On January 9, 2006, Plaintiff was treated by Dr. D'Souza for chronic back pain due to
18  previous disk injury and post-surgery. (Tr. 497.) Plaintiff reported pain levels with and without
19  medication at 6/10 and 10/10. (Tr. 497.) Dr. D'Souza observed that Plaintiff showed muscle
20  atrophy of the lower extremities due to disuse. (Tr. 497.)

21      In approximately January of 2006, Plaintiff began treatment for depression. (Tr. 31-32.)

22      A May 8, 2006 bone density scan revealed that Plaintiff was considered osteopenic
23  according to World Health Organization (WHO) criteria. (Tr. 515.)

24      A September, 2006 MRI noted disc degeneration had increased since the December,
25  2005 MRI. (Tr. 524.)

26      In September, 2006, Dr. Forrer diagnosed Plaintiff with failed back symptom, but noted
27  that the condition was stable. (Tr. 503.) Dr. Forrer noted that Plaintiff had undergone a follow-
28

1   up surgery for removal of the hardware from her spine, without obtaining any relief.  (*Id*.)  Dr.

2   Forrer further noted that Plaintiff was walking well independently.  (*Id*.)

3        On March 19, 2007, Plaintiff was treated by Dr. D'Souza, who noted that Plaintiff's pain

4   levels with and without medication were 8/10 and 10/10.  (Tr. 468.)

5        On May 30, 2007, Dr. Stricof performed a CT scan of Plaintiff's spine based on clinical

6   indications of low back pain extending to left lower extremity; the CT scan showed a

7   incomplete fusion at L5-S1 with center calcified disc protrusion.  (Tr. 125.)

8        During her administrative hearing, Plaintiff testified that she has not been able to work

9   since her back surgery.  (Tr. 30.)  She spends her days on the couch, watching television.  (Tr.

10  30.)  She tries to clean the house.  (Tr. 30-31.)  She grocery-shops with assistance.  (Tr. 31.)

11  She tries to help her children with their schooling but is unable to attend parent-teacher

12  conferences due to her back pain.  (Tr. 33.)  Plaintiff testified that her back surgery did not help

13  to alleviate her pain and her pain has not changed since it began in 2003.  (Tr. 39.)  She testified

14  that on a good day, her pain level is at a 5 or 6, and that on a bad day it is a 9 or 10.  (Tr. 43.)

15  The more Plaintiff moves, the more her back hurts.  (Tr. 43.)  She feels drowsy during the day

16  because she does not sleep well at night and because her pain medication makes her sleepy.  (Tr.

17  32, 47.)   Plaintiff described her limitations as: cannot lift 10 pounds regularly, cannot sit for

18  more than 30 minutes, cannot stand for more than 45 minutes, cannot kneel or climb, cannot

19  stand for 2 hours in an 8-hour workday and cannot sit for six hours in an 8-hour work day.  (Tr.

20  48-49.)  Plaintiff stated that she continues to suffer from depression because of her back pain

21  and that the depression makes it difficult for her to concentrate.  (Tr. 50.)  Plaintiff also testified

22  that she suffers from tendinitis in her right hand as a result of pulling herself to standing when

23  her back is hurting.  (Tr. 53.)  Plaintiff further stated that she had been diagnosed with dyslexia

24  while she was in school and that the dyslexia limited her reading comprehension and ability to

25  perform tasks such as bill-paying.  (Tr. 50.)

26

27

28

1    Stacia Schonbrun, a labor market consultant, testified that, assuming Plaintiff had pain

2    but retained the ability to engage in less than full sedentary employment, there were jobs in the

3    national and Arizona economy that were appropriate for Plaintiff.  Ms. Schonbrun further

4    testified that if Plaintiff's limitations were as Plaintiff described them, Plaintiff could not sustain

5    full-time work in any capacity.  (Tr. 62.)

6                                    CLAIM EVALUATION

7        Social Security Administration (SSA) regulations require that disability claims be

8    evaluated pursuant to a five-step sequential process.  20 C.F.R. §§ 404.1520, 416.920; *Baxter*

9    *v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir.1991).  The first step requires a determination of

10   whether the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b),

11   416.920(b).  If so, then the claimant is not disabled and benefits are denied.  *Id.*  If the claimant

12   is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a

13   determination of whether the claimant has a medically severe "impairment or combination of

14   impairments."  20 C.F.R. §§ 404.1520(c), 416.920(c).

15       In making a determination at step two, the ALJ uses medical evidence to consider

16   whether the claimant's impairment more than minimally limits or restricts his or her "physical

17   or mental ability to do basic work activities."   *Id.*  If the ALJ concludes the impairment is not

18   severe, the claim is denied.  *Id.*  Upon a finding of severity, the ALJ proceeds to step three

19   which requires a determination of whether the impairment meets or equals one of several listed

20   impairments that the Commissioner acknowledges are so severe as to preclude substantial

21   gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App.1.  If

22   the claimant's impairment meets or equals one of the listed impairments, then the claimant is

23   presumed to be disabled, and no further inquiry is necessary.  *Ramirez v. Shalala,* 8 F.3d 1449,

24   1452 (9th Cir.1993).  If the claimant's impairment does not meet or equal a listed impairment,

25   evaluation proceeds to the next step.

26

27

28

1   The fourth step requires the ALJ to consider whether the claimant has sufficient residual

2   functional capacity[2] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the

3   ALJ concludes the claimant has sufficient RFC, then the claim is denied.   20 C.F.R. §§

4   404.1520(f), 416.920(f).   If the claimant cannot perform any past work due to a severe

5   impairment, then the ALJ must move to the fifth step which requires consideration of the

6   claimant's RFC to perform other substantial gainful work in the national economy in view of

7   claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 416.920(g).

8                                    THE ALJ'S FINDINGS

9       The ALJ analyzed Plaintiff's claim of disability according to the five-step procedure.

10  At step one of the analysis, the ALJ found that Plaintiff was not engaged in substantial gainful

11  activity. (Tr. 10.) At step two of the analysis, the ALJ concluded that Plaintiff suffered from

12  the following severe impairments: back pain, tendinitis of the dominant right hand, dyslexia,

13  and major depressive disorder.  (*Id*.)   At step three, the ALJ determined that Plaintiff's

14  impairments did not meet or equal one of the impairments listed in the Social Security

15  regulations. (*Id*.) The ALJ found Plaintiff's statements concerning the intensity, duration and

16  limiting effect or her symptoms to be not entirely credible.  The ALJ also gave little weight to

17  the opinions of Plaintiff's treating physician and psychiatrist. (Tr. 14.)  At step four, the ALJ

18  concluded that Plaintiff did not have sufficient RFC to perform her past relevant work as a

19  waitress.  At step five, the ALJ concluded that Plaintiff had RFC to perform unskilled work at

20  the sedentary level and that such jobs exist in significant number in the national economy. (Tr.

21  11.) The ALJ found that Plaintiff could lift and carry ten pounds occasionally, sit for about six

22  hours in an 8-hour day and stand/walk for about 2 hours in an 8-hour day.  The ALJ concluded

23  that Plaintiff should avoid concentrated exposure to extreme cold, vibrations and working

24  hazards such as moving machinery and unprotected heights. (Tr. 11.) The ALJ found that

25  Plaintiff could perform simple repetitive tasks as she is moderately limited in her ability to:

26

27       [2] Residual functional capacity is defined as that which an individual can still do despite her

28  limitations. 20 C.F.R. § 404.1545.

- 6 -

1   understand, remember and carry out detailed instructions; maintain attention and concentration
2   for extended periods; complete a normal workday and workweek without interruptions from
3   psychologically-based symptoms; and to perform at a consistent pace without an unreasonable
4   number and length of rest periods. (*Id*.)

5                                                   STANDARD OF REVIEW

6          An individual is entitled to SSI disability benefits if he or she demonstrates, through
7   medically acceptable clinical or laboratory standards, an inability to engage in substantial
8   gainful activity due to a physical or mental impairment that can be expected to last for a
9   continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A). "A claimant will be
10  found disabled only if the impairment is so severe that, considering age, education, and work
11  experience, that person cannot engage in any other kind of substantial gainful work which exists
12  in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia
13  v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

14         To establish a *prima facie* case of disability, the claimant must demonstrate an inability
15  to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).
16  Once the claimant meets that burden, the Commissioner must come forward with substantial
17  evidence establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th
18  Cir. 1985).

19         The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),
20  1383(c)(3). The court may overturn the decision to deny benefits "only if it is not supported by
21  substantial evidence or it is based on legal error." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th
22  Cir. 1992) (citations omitted). The Commissioner's determination that a claimant is not
23  disabled must be upheld if the Commissioner applied the proper legal standards and the record
24  as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d
25  328, 330 (9th Cir. 1990) (citing *Desrosiers v. Secretary*, 846 F.2d 573, 575-76 (9th Cir.1988);
26  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is defined as "such
27  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
28  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen,* 853 F.2d

1   643, 644 (9th Cir. 1987).  The standard is less than a "preponderance of the evidence" standard.

2   *Matney,* 981 F.2d at 1019.

3        "[I]f the evidence can support either outcome, the court may not substitute its judgment

4   for that of the ALJ."  *Matney,* 981 F.2d at 1019 (citing *Richardson,* 402 U.S. at 400).  When

5   applying the substantial evidence standard, however, the court should not mechanically accept

6   the Commissioner's findings but should review the record critically and thoroughly.  *Day v.*

7   *Weinberger*, 522 F.2d 1154 (9th Cir.1975).  Reviewing courts must consider the evidence that

8   supports as well as detracts from the Commissioner's conclusion.  *Id*. at 1156.  A denial of

9   benefits will be set aside if the Commissioner fails to apply proper legal standards in weighing

10  the evidence even though the findings may be supported by substantial evidence.    *Frost v.*

11  *Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002);  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.

12  1978).

13       In evaluating evidence to determine whether a claimant is disabled, the opinion of a

14  treating physician[3] is entitled to great weight.  *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th

15  Cir. 1993).  The Commissioner may reject a treating physician's uncontradicted opinion only

16  if he sets forth clear and convincing reasons for doing so.  *Lester v. Chater*, 81 F.3d 821, 830

17  (9th Cir. 1995);  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).  If the treating

18  physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion

19  only if he provides specific and legitimate reasons supported by substantial evidence in the

20  record.  *Lester,* 81 F.3d at 830.  No distinction is drawn "between a medical opinion as to a

21  physical condition and a medical opinion on the ultimate issue of disability."  *Rodriguez v.*

22  *Bowen*, 876  F.2d 759, 761 n.7 (9th Cir. 1989).

23       When medical reports are inconclusive, questions of credibility and resolution of

24  conflicts in the testimony are functions solely of the Commissioner.  *Magallanes,* 881 F.2d at

25  751 (citations omitted).  The Commissioner's finding that a claimant is less than credible,

26

27        [3] The term "physician" includes psychologists and other health professionals who are not

28  medical doctors.  *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995).

however, must have some support in the record.  *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

DISCUSSION

Plaintiff alleges that the ALJ improperly assessed the credibility of Plaintiff's statements because: (1) the ALJ discounted Plaintiff's testimony regarding her debilitating pain, even though her testimony was supported by the medical record; (2) the ALJ found that Plaintiff had not suffered from muscle atrophy, even though the medical record included a finding that she had; and (3) the ALJ failed to consider the side effects of Plaintiff's medications.

**1.     Evidence underlying the ALJ's findings.**

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment or impairments" and "show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996). "The claimant need not produce objective medical evidence of the pain or fatigue itself or the severity thereof." *Id.* "Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom." *Id.* "Finally, the claimant need not show that her impairment could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused *some* degree of symptom." *Id.* (emphasis added).  This approach to the evaluation of a claimant's testimony "reflects the highly subjective and idiosyncratic nature of pain and other such symptoms." *Id.*

Once a claimant makes the required showing "and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." *Id.* at 1283-84. "[T]he ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1284.

1    In the present case, Plaintiff produced, and the ALJ acknowledged, objective medical
2    evidence of underlying impairments that could reasonably be expected to cause her pain,
3    specifically Plaintiff's back injury and resulting nerve damage, tendinitis, osteoporosis,
4    osteopenia and depression.  (AR 12.)   The ALJ, however, rejected Plaintiff's testimony
5    regarding the extent of that pain, finding that "the claimant's medically determinable
6    impairments could reasonably be expected to produce the alleged symptoms, but that the
7    claimant's statements concerning the intensity, persistence and limiting effects of these
8    symptoms are not entirely credible."  (AR 12-13.)   In support, the ALJ found that the medical
9    records were inconsistent with the degree of pain and psychological symptoms claimed by
10   Plaintiff.  According to the ALJ, imaging studies, x-rays and EMG/NCV studies did not support
11   Plaintiff's allegations of pain.

12        The medical records do not support the ALJ's conclusion that the Plaintiff is not credible.
13   It is unclear which imaging studies, x-rays and EMG/NCV studies the ALJ relied upon in
14   reaching his conclusion, because no citation to Plaintiff's medical record is included in this
15   portion of the ALJ's decision.  Moreover, this Court's review of the record indicates that,
16   although Plaintiff's November, 2005 EMG test did not reveal any nerve damage (Tr. 370), her
17   MRI and numerous x-rays supported her allegations of pain.  A September, 2003 MRI revealed
18   bulging discs at T11-12, L4-5 and L5-S1.  (Tr. 351-52.)  An August, 2004 x-ray of Plaintiff's
19   lumbar spine noted decreased disc height at L4-5 and L5-S1.  (Tr. 352.)  A physical exam
20   performed the same day demonstrated that Plaintiff's lumbar spine range of motion was
21   extremely limited by pain symptoms. (Tr. 351.) In October, 2004, Dr. Mar reviewed Plaintiff's
22   earlier x-rays and MRI and concluded that Plaintiff had a degenerative disk at L4-5 and disk
23   protusion at L5-S1.  (Tr. 340.)  Dr. Mar stated "I suspect the MRI scan is underrepresenting her
24   actual disease."  (Tr. 340.)  He noted that Plaintiff's "spinal tenderness [was] exquisite over her
25   L5 segment," and that Plaintiff appeared uncomfortable and in distress.  (Tr. 338-9.)  Following
26   Plaintiff's surgery, Plaintiff continued to report pain to her physicians; x-rays taken in
27   December, 2005 revealed that the surgery had resulted in fusion of the spine at L4-5 and L5-S1
28   but disc bulging was still occurring at L5-S1. (Tr. 367.)  After reviewing the December, 2005

1   x-rays, Dr. Lewandrowski also opined that the hardware inserted during the fusion was causing

2   pain. (Tr. 364.)  Also in December, 2005, an MRI revealed a bulging disc at L5-S1. (Tr. 526.)

3   A May 8, 2006 bone density scan revealed that Plaintiff was considered osteopenic according

4   to World Health Organization (WHO) criteria. (Tr. 515.)  A September, 2006 MRI noted disc

5   degeneration had increased since the December, 2005 MRI. (Tr. 524.)  On May 30, 2007, Dr.

6   Stricof performed a CT scan of Plaintiff's spine based on clinical indications of low back pain

7   extending to left lower extremity; the CT scan showed a incomplete fusion at L5-S1 with center

8   calcified disc protrusion. (Tr. 125.)

9           The ALJ concluded that "multiple exams revealed normal strength and sensation." The

10  Defendant concedes that this conclusion is erroneous and that Dr. D'Souza noted muscle

11  atrophy. (Resp. Brief at 5.)  In addition, review of the record demonstrates that although

12  Plaintiff's strength and sensation was reported as normal in some instances, pain symptoms

13  accompanied each strength test as noted in the physician's records.  For example, in August,

14  2004, Dr. Mar noted that Plaintiff's "upper and lower extremity strength [was] within normal

15  limits." (Tr. 351.)  However, Dr. Mar also noted that Plaintiff's range of motion was limited

16  and that Plaintiff experienced back pain during flexion, extension, extension with rotation, left

17  lateral side bending, straight leg raising and femoral stretching. (*Id.*)  On October 14, 2004, Dr.

18  Brailsford noted that Plaintiff had normal lower extremity strength but that it was accompanied

19  by pain and guarding. (Tr. 340.)  In June, 2005, Dr. Lewandrowski observed that Plaintiff had

20  "5/5 motor strength in bilateral upper and lower extremities ... and normal sensory examination

21  with pain in the back of the thigh and anterolateral shin bone going down both legs." (Tr. 385.)

22   On December 12, 2005, Dr. Lewandrowski noted that Plaintiff had "5/5 motor strength [but]

23  pain at the lumbrosacral junction which appears related to prominent screws." (Tr. 364.)   It

24  was not reasonable for the ALJ to disbelieve Plaintiff's reports of pain based on reports of

25  Plaintiff's normal strength, given that each of those strength tests revealed pain symptoms upon

26  exertion.  The ALJ improperly rejected Plaintiff's testimony on this ground.

27          The ALJ reasoned that Plaintiff was not credible for two additional reasons: Plaintiff's

28  lack of consistent mental health treatment and her failure to comply with the medical regime.

1    With respect to Plaintiff's depression, the ALJ noted that although Plaintiff was prescribed anti-

2    depressant medication by her primary care physician, she did not seek mental health treatment

3    until early 2006, and psychiatric records show her failure to appear at scheduled appointments.

4    The ALJ concluded that Plaintiff's lack of consistent ongoing mental health care did not support

5    the intensity or duration of Plaintiff's psychological symptoms.   With respect to non-

6    compliance, the ALJ noted that "there are numerous references in the medical evidence which

7    are indicative of claimant's non-compliance with the medical regimen specified by the treating

8    physicians ... [Plaintiff] was advised on multiple occasions to stop smoking ... in addition,

9    [Plaintiff] failed to show up at a number of scheduled psychiatric appointments....  Plaintiff's

10   noncompliance does not support the alleged intensity and duration of pain and subjective

11   complaints." (Tr. 13.)

12          These conclusions are based on an overly-selective review of the record. First, Dr.

13   Lewandrowski did advise Plaintiff to stop smoking, because he believed it would interfere with

14   her spinal fusion. (Tr. 364.) However, Dr. Lewandrowski also opined that Plaintiff's post-

15   surgery pain was caused by the screws inserted during surgery; he made no connection between

16   Plaintiff's smoking habit and her post-surgery pain. (Tr. 364.)  Furthermore, the record

17   indicates that Plaintiff consistently attended psychiatric appointments from January, 2006 until

18   October, 2006. (Tr. 537-574.) She missed appointments in November and December, 2006.

19   (Tr. 574.) By December, 2006, Plaintiff was growing discouraged with the treatment because

20   her therapist told her that "as long as she used pain killers (narcotics) she would have a hard

21   time moving away from her depression and therapy probably was not going to help her." (Tr.

22   574.)  Plaintiff also testified at her administrative hearing that her psychiatric treatment was

23   "difficult because of the medication that I take." (Tr. 32.)  The fact that Plaintiff abandoned a

24   treatment program that was not helping her cannot reasonably be considered evidence

25   undermining her subjective reports of pain.[4]

26   _____

27          [4] In addition, Plaintiff's discouragement with and abandonment of her mental health

28   treatment was consistent with her depression diagnosis. *See Nguyen v. Chater*, 100 F.3d 1462,

- 12 -

1      A final basis for the ALJ's rejection of Plaintiff's reports of pain was his belief that "two

2  common side effects of prolonged and/or chronic pervasive pain are weight loss and diffuse

3  atrophy or muscle wasting," and his conclusion that "[t]here is no record of the claimant having

4  lost weight since her alleged date of disability onset [and] there are no clinical notes regarding

5  diffuse atrophy or muscle wasting."  (AR 13-14.)  The ALJ committed legal error by

6  speculating, without medical evidence, regarding the common side effects of chronic pain.  *See*

7  *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999) (finding that

8  ALJ's conclusion was not supported by substantial evidence where ALJ engaged in speculation

9  without citing to evidentiary support).  In addition, Plaintiff's medical records did include a

10  report of muscle atrophy.  (Tr. 497.)

11      Lastly, the ALJ concluded that Plaintiff's claim that she was limited in her daily activities

12  was not credible because it was contradicted by her testimony at the hearing, when Plaintiff

13  stated that she could do light household chores and had recently traveled to Idaho.  The ALJ

14  noted portions of the medical record in which Plaintiff stated that she could do laundry and

15  shopping with help from her family.  The ALJ reasoned that because Plaintiff testified to

16  spending much of the day reading and watching television, it could be inferred that Plaintiff

17  maintained a level of daily activity not inconsistent with sedentary-type activity.  This

18  conclusion was not supported by substantial evidence.  An ALJ may reject a claimant's

19  symptom testimony if the claimant is able to spend a substantial part of her day performing

20  household chores or other activities that are transferable to a work setting. *See Fair v. Bowen*,

21  885 F.2d 597, 603 (9th Cir.1989). In this case, the ALJ did not address the limited nature of

22  Plaintiff's daily activities or whether such activities were transferable to the work place.

23      Reversal is warranted when an examination of the entire record "shows that the ALJ has

24  erred in characterizing statements and documents contained therein to reach the conclusion that

25  [Plaintiff] exaggerated [his] symptoms." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

26

27  1465 (9th Cir.1996) ("It is a questionable practice to chastise one with a mental impairment for

28  the exercise of poor judgment in seeking rehabilitation.").

1    Plaintiff testified that she could not grocery shop without assistance. (Tr. 31.) She could not

2    help her children with their school work or attend their school conferences. (Tr. 32-33.) Her

3    trip to Idaho was the only trip she had taken in the past two years, the trip was necessitated by

4    her grandmother's illness, and she was transported through the airport by wheelchair. (Tr. 35-

5    36.) She stated that she did not often read during the day because she could not remember what

6    she had read. (Tr. 46.) She described herself as being able to cook "from cans" and being able

7    to wipe off counters and load the dishwasher. (Tr. 46-47.) She stated that she needed help with

8    the laundry. (Tr. 47.) She is unable to sleep through the night and naps during the day. (Tr.

9    47-48.) Thus, Plaintiff's testimony reveals that she does not perform household chores which

10   are transferable to the workplace. The Ninth Circuit "has repeatedly asserted that the mere fact

11   that a plaintiff has carried on certain daily activities, such as grocery shopping [and] driving a

12   car, ... does not in any way detract from [his] credibility as to [his] overall disability. One does

13   not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d

14   1044, 1050 (9th Cir. 2001).

15          For all of the above reasons, the Magistrate Judge concludes that the ALJ's stated

16   reasons for rejecting Plaintiff's reports of debilitating pain were not supported by substantial

17   evidence.[5]

18   **2.     The Court should remand for an award of benefits**

19          Remand for further administrative proceedings is appropriate if enhancement of the

20   record would be useful.  *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

21   Conversely, where the record has been developed fully and further administrative proceedings

22   would serve no useful purpose, the district court should remand for an immediate award of

23   benefits. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Varney v. Secretary of*

24   ───────────────────

25          [5] In addition, Plaintiff argues, and the Court agrees, that the ALJ improperly failed to
     consider the side effects of Plaintiff's medication in evaluating the severity of Plaintiff's
26   symptoms, as required by 20 C.F.R. § 404.1529. Plaintiff testified at the hearing that her
     medications made her tired: "It's hard to concentrate. Sometimes it's hard just to stay awake."
27   (Tr. 32.) She stated that her husband had to help her remember to take her medications. (Tr.
28   41.) The ALJ did not address these side effects in his decision.

1  *Health and Human Services*, 859 F.2d 1396, 1399 (9th Cir. 1988).  More specifically, the

2  district court should credit evidence that was rejected during the administrative process and

3  remand for an immediate award of benefits if: (1) the ALJ failed to provide legally sufficient

4  reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved

5  before a determination of disability can be made; and (3) it is clear from the record that the ALJ

6  would be required to find the claimant disabled were such evidence credited. *Harman*, 211 F.3d

7  at 1178; *see also McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir.2002); *Smolen*, 80

8  F.3d at 1292.

9         In this case, the ALJ improperly discounted Plaintiff's testimony about the severity of

10  her symptoms.  If such evidence were credited, no outstanding issues must be resolved before

11  a determination of disability can be made.  Plaintiff described her limitations as: cannot lift 10

12  pounds regularly, cannot sit for more than 30 minutes, cannot stand for more than 45 minutes,

13  cannot kneel or climb, cannot stand for 2 hours in an 8-hour workday and cannot sit for six

14  hours in an 8-hour work day.  (Tr. 48-49.)  Stacia Schonbrun, a labor market consultant,

15  testified that if Plaintiff's limitations were as Plaintiff described them, Plaintiff could not sustain

16  full-time work in any capacity.  (Tr. 62.)

17        Accordingly, the Magistrate Judge recommends that Plaintiff's appeal be remanded for

18  an award of benefits.

19                                    RECOMMENDATION

20        For the foregoing reasons, the Magistrate Judge recommends that the District Court, after

21  its independent review, enter an order GRANTING the relief requested by Plaintiff in her

22  opening brief (Doc. No. 12) and REMANDING Plaintiff's claim for an award of benefits.

23        Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within

24  10 days after being served with a copy of this Report and Recommendation.  If objections are

25  not timely filed, the party's right to *de novo* review may be waived.  *See United States v. Reyna-

26  Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).  If

27  objections are filed, the parties should direct them to the District Court by using the following

28  case number: **CV 08-543-TUC-CKJ.**

1    The Clerk of the Court is directed to send a copy of this Report and Recommendation

2  to all parties.

3    DATED this 22nd day of May, 2009.

4

5

6    _____
    Jennifer C. Guerin
6    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28